```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

```
UNITED STATES OF AMERICA    :
                            :     CRIMINAL ACTION
       v.                   :     NO. 00-419-04
                            :
DENNIS JENKINS              :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          MAY 22, 2009

Petitioner Dennis Jenkins ("Petitioner") is serving a 199-month term of imprisonment for federal offenses involving possession with distribution of cocaine base ("crack") and distribution of crack within 1,000 feet of a public housing authority.  Petitioner was subsequently convicted in state court of murder and was sentenced to serve a consecutive life sentence following the completion of his federal sentence.  He now seeks the reduction of his drug sentence to reflect Amendment 706 to the United States Sentencing Commission Guidelines (the "Guidelines"), which altered § 2D1.1 of the Guidelines to reduce the sentencing ranges applicable to crack offenses.

Petitioner's motion for a sentence reduction will be denied because: (1) he is not entitled to a reduction since his sentence constituted a non-guideline sentence under 18 U.S.C. § 3553(a) and United States v. Booker, 543 U.S. 220 (2005); (2) his violent past and the danger he poses to the community; and (3) an unwarranted sentencing disparity with co-defendant Otto Barbour

-1-

would result.

I.   BACKGROUND

    A.   Petitioner's Sentence

On December 20, 2000, following a jury trial, Petitioner was found guilty of: (1) conspiracy to distribute cocaine base ("crack"), in violation of 21 U.S.C. § 846 ("Count One"); (2) distribution of crack within 1000 feet of a public housing authority, in violation of 21 U.S.C. § 860 ("Count Eleven"); and (3) distribution of crack, in violation of 21 U.S.C. § 841(a)(1) ("Count Four").

At sentencing, the Court found that Petitioner's Total Offense Level was 34 with a Criminal History Category of VI, and attributed approximately 93 grams of crack to Petitioner.  On September 28, 2001, Petitioner was sentenced to: (1) 262 months imprisonment on Counts One and Eleven; and (2) 240 months imprisonment on Count Four.  All terms of imprisonment are to run concurrently.

Petitioner appealed, challenging the sufficiency of the evidence in support of the conspiracy conviction and the calculation of the amount of crack that was attributable to him. On November 12, 2003, the Third Circuit affirmed the judgments of conviction on Counts Four and Eleven, reversed the conviction on Count One, vacated the sentence and remanded for reconsideration of Petitioner's sentence.  United States v. Phillips, 349 F.3d

138, 143-44 (3d Cir. 2003).  Although Petitioner also challenged the Court's determination of the drug quantity attributable to him, the Third Circuit rejected the argument.  On April 12, 2004, Petitioner was resentenced.  The Court reimposed the term of 262 months imprisonment because the vacatur of the conviction on Count One did not affect the sentencing calculation.

Petitioner appealed the second sentence, challenging the factual findings that he was personally responsible for distributing between 50 and 149 grams of cocaine base.  On March 20, 2006, the Third Circuit affirmed Petitioner's conviction on Counts Four and Eleven, but in accordance with a general policy of vacating sentences entered pursuant to pre-Booker law, it vacated his sentence and remanded the case for resentencing. United States v. Jenkins, 164 F. App'x 259, 259-60 (3d Cir. 2006).

On May 18, 2009, the Court resentenced Petitioner to 199 months imprisonment, taking the § 3553 factors and the United States Supreme Court decision in Booker into account.  The Court referenced congressional intent to minimize disparities in sentencing.  In particular, the Court stated "[D]efendant [(Petitioner)] in this case is similarly situated with a [co-]defendant [(Otto Barbour)] who the Court has previously sentenced."  Tr. Sent. Hr'g 30, May 18, 2009.  The Court had

sentenced co-defendant Otto Barbour to 187 months imprisonment.[1]

### B. Changes to the Sentencing Guidelines

On November 1, 2007, the United States Sentencing Commission (the "Commission") adopted Amendment 706 to the Guidelines to address what the Commission had come to view as unwarranted disparities in the sentences of defendants who possess or distribute various forms of cocaine. Prior to November 1, 2007, the Guidelines provided for a 100-to-1 ratio in sentences for crimes involving cocaine powder compared to those involving crack.[2] For example, § 2D1.1 of the Guidelines provided the same base offense level for a crime involving 150 kilograms or more of cocaine powder and for one involving 1.5 or more kilograms of crack. U.S.S.G. § 2D1.1(c)(1) (2006).

Under the November 1, 2007 amendment, the ratio between powder and crack sentences has been decreased. For example, 150 kilograms of cocaine powder is now treated as the equivalent of 4.5 kilograms of crack. U.S.S.G. § 2D1.1(c)(1) (2007). The bottom line for individual defendants is that a defendant

---

[1] Co-defendant Otto Barbour also had a Total Offense Level of 34 with a Criminal History Category of VI.

[2] This ratio was derived from the 100-to-1 ratio created by Congress in its statutory mandate of minimum sentences for cocaine offenses. See Anti-Drug Abuse Act of 1986, 21 U.S.C. § 841(b)(1) (requiring a five-year mandatory minimum penalty for a first-time trafficking offense involving 5 grams or more of crack, or 500 grams of powder cocaine).

sentenced under § 2D1.1 for a crack offense after November 1, 2007 receives a base offense level that is two levels lower than what he would have received for the identical offense if he had been sentenced before the November 1, 2007 amendment.  2 Federal Sentencing Guidelines Manual App. C 1160 ("Appendix C").

The Commission also altered the calculation of base offense levels for offenses involving crack and other controlled substances to reduce the impact of a crack conviction.  Id. at 1158-59.  The base offense level for these offenses is determined by converting the amount of each substance into a comparable amount of marijuana and then determining the base offense level for that amount of marijuana.  U.S.S.G. § 2D1.1, comment 10(A)-(E).  Amendment 706 provides that a given amount of crack translates into a lesser quantity of marijuana than it did under the old Guidelines.  Appendix C at 1158; compare U.S.S.G. § 2D1.1 (2007), with U.S.S.G. § 2D1.1 (2006).  Thus, post-Amendment 706 Guidelines ranges for crimes involving crack and other controlled substances are also lower than ranges for the same crimes pre-amendment.

The Commission based Amendment 706 on "its analysis of key sentencing data about cocaine offenses and offenders; [a] review[] [of] recent scientific literature regarding cocaine use, effects, dependency, prenatal effects, and prevalence; research[] [on] trends in cocaine trafficking patterns, price, and use; [a]

-5-

survey[] [of] the state laws regarding cocaine penalties; and [the Commission's] monitor[ing] [of] case law developments." Appendix C at 1159-60. This information led to the conclusion that "the 100-to-1 drug quantity ratio significantly undermines various congressional objectives set forth in the Sentencing Reform Act and elsewhere." Id. at 1160.

II. MOTION FOR RESENTENCING

Petitioner moves, pursuant to 18 U.S.C. § 3582, for a reduction of his sentence because of recent changes to the Guidelines in the treatment of offenses involving crack. Section 3582(c)(2) provides the authority to reduce a sentence if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. 3582(c)(2). The applicable policy statement, Section 1B1.10(a), provides that if "the guideline range applicable to th[e] defendant has . . . been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below," a reduction in the defendant's term of imprisonment is authorized under 18 U.S.C. § 3582(c)(2). U.S.S.G. § 1B1.10(a).

    A.   Petitioner is Eligible for Resentencing for Counts Four and Eleven Under Amendment 706

Count Four and Eleven of Petitioner's sentence was based on the sentencing guideline ranges before Amendment 706 was

enacted and therefore Petitioner is eligible for resentencing pursuant to 18 U.S.C. § 3582.  Petitioner's applicable guideline range has been lowered as a result of Amendment 706.  Petitioner was held responsible for approximately 93 grams of crack and he received a two level enhancement for Count Eleven.  This translated to a base offense level of 34.  Level 34, along with a Criminal History Category of VI, placed the original guideline range between 262 and 327 months imprisonment.  The Court had sentenced Petitioner to 199 months imprisonment.

   While Amendment 706 does not change the Criminal History Category, in this case, it does lower Petitioner's base offense level.  Under Amendment 706, possession of 93 grams of crack and a two level enhancement for Count Eleven results in a base offense level of 32, rather than 34.  See U.S.S.G. § 2D1.1(c).  This translates to a sentencing range between 210 and 262 months imprisonment.  Therefore, because Petitioner was sentenced based on a guideline range affected by Amendment 706, he is eligible for a sentence reduction.


      B.   While Eligible, Petitioner Should Not Receive a Further
           Reduction in Sentence

         1.   Petitioner was sentenced post-Booker, taking into
              account § 3553(a) factors

   Petitioner is not entitled to a reduction in sentence under Section 1B1.10 of the Sentencing Guidelines because his

-7-

sentence was previously reduced under § 3553(a) and <u>Booker</u>.[3]
Specifically, the Court reduced Petitioner's sentence to 199
months imprisonment to avoid a sentencing disparity between
Petitioner and co-defendant Otto Barbour, a co-defendant who was
similarly situated who had been sentenced to 187 months
imprisonment in this case.

> Section 1B1.10(b)(2)(B) of the Sentencing Guidelines

provides:

> If the original term of imprisonment imposed was less
> than the term of imprisonment provided by the guideline
> range applicable to the defendant at the time of
> sentencing, <u>a reduction comparably less</u> than the
> amended guideline range determined under subdivision
> (1) of this subsection <u>may be appropriate</u>.  However, if
> the original term of imprisonment constituted a non-
> guideline sentence determined pursuant to 18 U.S.C. §
> 3553(a) and <u>United States v. Booker</u>, 543 U.S. 220
> (2005), <u>a further reduction generally would not be
> appropriate</u>.

<u>Id.</u> (emphasis added).  Petitioner urges the Court to utilize the
first clause in Section 1B1.10(b)(2)(B) ("comparably less
reduction clause") whereas the Government relies upon the second
clause in Section 1B1.10(b)(2)(B) ("a further reduction generally
would not be appropriate clause").  <u>See</u> <u>United States v. Clark</u>,
No. 03-40109-01-SAC, 2008 WL 686121, *2-*3 (D. Kan. Mar. 11,
2008).

---

[3] In the alternative, the Government argues, if the Court grants a departure, the reduced sentence should be no less than 160 months.

Here, the Court agrees with the Government and will refrain from granting Petitioner a reduction in sentence. Section 1B1.10(b)(2)(B) of the Sentencing Guidelines directs the Court that a further reduction is generally not appropriate where the non-guideline sentence was imposed under § 3553(a) and <u>Booker</u>.  While a "comparably less" sentence may be warranted under certain circumstances, such circumstances are not present here.[4]

2.  Petitioner's status as a violent offender and a <u>danger to the public a sentence reduction</u>

Petitioner has an extensive criminal history beginning with armed robbery in 1983 at the age of fifteen, ultimately resulting in a Criminal History Category VI.  Moreover, Petitioner was convicted of distributing a large quantity of crack near a public housing authority project, preying on those most vulnerable to the ills of drug addiction.

Under Application Note 1(B)(iii) to Section 1B1.10 of the Sentencing Guidelines, the Court is also directed to

---

[4]  Section 1B1.10(b)(2)(B) and Application Note 3 suggest a reduction comparable to the originally imposed sentence. Application Note 3 provides an example, illustrating the suggested calculus to determine the new reduction of sentence based on a percentage of the original departure from the guideline range.  Section 1B1.10(b)(2)(B) is not mandatory and leaves the Court to the exercise of discretion, under the factors set forth in 18 U.S.C. § 3553(a) and "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(2).

"consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." Id.[5]

---

[5]   Courts are divided on the extent to which a defendant's behavior before and after imprisonment militates against sentence reductions.  These decisions emphasize the need for careful case by case analysis of the potential public safety risks associated with a sentence reduction.  Compare United States v. Gilbert, No. 96-CR-20045, 2008 WL 2858009, at *3 (W.D. Mich. July 22, 2008) (refusing to apply reduction because the defendant was charged with assault with intent to commit murder before being sentenced for cocaine convictions, and received nine incident reports and served eight detentions while incarcerated); United States v. Monday, No. 03-CR-61, 2008 WL 4239012, at *2-3 (W.D. Mich. Sept. 9, 2008) (refusing to grant reduction when the defendant assaulted a corrections officer and had a cell phone in violation of prison policy, posing a threat to those around him and indicating an inability to follow simple rules); United States v. May, Crim. No. 93-00163-WS, 2008 WL 2790212, at *2 (S.D. Ala. July 18, 2008) (refusing to apply sentence reduction, despite no prior criminal history, because post-sentencing conduct involved drug and weapon violations, disobeying prison officials, inciting inmate riots, and threatening physical harm); with United States v. Graham, Crim. No. 3:00-cr-58 (AHN), 2008 WL 1817988, at *2 (D. Conn. Apr. 18, 2008) (granting reduction based on probation officer's addendum recommending reduction based presumably on the fact that no public safety factors were implicated by Graham's offense conduct, but refusing to reconsider further reduction requested because of the seriousness of the offense and sanctions while incarcerated); United States v. Cruz, Crim. No. 1:CR-95-204-01, 2008 WL 4671793, at *2 (M.D. Pa. Oct. 17, 2008) (granting reduction based on consideration of relevant factors, nature of the danger defendant may pose to society if sentence is reduced, and post-conviction conduct, despite state conviction for attempted murder for which defendant was currently serving a state prison sentence); United States v. Dobbins, No 3:01-CR-174, 2008 WL 3897535, at *3-4 (E.D. Tenn. Aug. 19, 2008) (granting reduction despite prior conviction and other arrests for violent behavior when defendant had no post-sentencing incident reports, enrolled in GED classes while incarcerated, and presented no evidence he was a risk of danger to the community).

   A defendant's post-sentencing conduct does not warrant an automatic denial of a sentence reduction.  See, e.g., United States v. Ayala, 540 F. Supp. 2d, 676, 680 (W.D. Va. 2008)

With respect to Petitioner's post-conviction conduct, he has a record of 12 disciplinary violations committed in prison between 2001 and 2005. Although there is not evidence of disciplinary violations committed since May 19, 2005, the Court finds such behavior to be telling.[6]

### 3. Need to avoid unwarranted sentencing disparity

Finally, the Court originally departed significantly from the guidelines in order to minimize the disparity in sentencing between Petitioner and co-defendant Otto Barbour. Otto Barbour received 187 months imprisonment whereas Petitioner received 199 months imprisonment. Co-defendant Otto Barbour was found guilty of distributing less than one gram of crack.

---

(reasoning that infractions committed while incarcerated are punishable by the Bureau of Prisons). The court in United States v. Miller extended this analysis by considering the defendant's post-sentencing misconduct as only a factor in determining a sentencing reduction rather than an automatic denial of a motion for sentence reduction. United States v. Miller, No. 3:01-CR-118, 2008 WL 782566, at *3 (E.D. Tenn. Mar. 21, 2008) (granting reduction in sentence based on positive conduct such as obtaining his GED and completing educational classes, and also noting that although defendant will not immediately return to the community because he will serve a state sentence consecutively to his federal sentence, the federal sentence reduction will result in the defendant entering the community sooner than he otherwise would).

[6] Petitioner submitted evidence of completing the following courses : (1) victim impact; (2) classification issues; (3) security designation and custody classification class; (4) drug education; and (5) beginner's legendary abs program. The Court does recognize Petitioner's completed courses as commendable.

Barbour Sent. Tr. 15-16, 19, Sept. 14, 2005.  On the other hand, Petitioner was found guilty of distributing less than five grams of crack.  (Jenkins Tr. 8, May 18, 2006, doc. no. 542.)  A reduction of Petitioner's sentence below that of co-defendant Otto Barbour, who was found guilty of distributing less than one gram of crack, would contravene congressional intent to minimize unwarranted sentencing disparities.

III. CONCLUSION

Although Petitioner is technically eligible for a sentence reduction under the Guidelines, the Court declines to apply a sentence reduction under 18 U.S.C. § 3582(c)(2).  For the reasons set forth above, the motion for a reduction in sentence will be denied.

An appropriate order follows.